John J. Grunert, Bar No. 036402012
Jeffrey A. Bartos (*pro hac vice filed*)
Elizabeth A. Roma (*pro hac vice filed*)
GUERRIERI, BARTOS & ROMA, P.C.
1900 M Street, NW, Suite 700
Washington, DC  20036-2243
(202) 624-7400
Fax: (202) 624-7420

*Counsel for IAM Defendants*

**UNITED STATES DISTRICT COURT OF NEW JERSEY
NEWARK DIVISION**

|  |  |
|---|---|
| **LINDA RIZZO-RUPON, *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 2:19-cv-00221** |
| **INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, *et al.*,** | **MEMORANDUM IN SUPPORT OF IAM'S MOTION TO DISMISS** |
| | **Motion Date: July 1, 2019** |
| **Defendants.** | |

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

STATEMENT OF FACTS AS ALLEGED............................................................2

    I.    Background Facts.................................................................................2

    II.    Nature of Plaintiffs' Complaint...........................................................4

LEGAL STANDARD............................................................................................5

ARGUMENT.........................................................................................................6

    I.    Because New Jersey is Not a "Right to Work" State, No First
Amendment Claim Could Be Present in this Complaint.......................6

    II.    Dismissal Is Required Under *Railway Employes' Department
v. Hanson*..........................................................................................8

        A.    Background Of RLA And Section 2 Eleventh............................9

        B.    The Supreme Court Holds In *Railway Employes' Department
v. Hanson* That Section 2 Eleventh "does not violate either
the First or the Fifth Amendments."........................................11

        C.    The Supreme Court's Holding In *Hanson* Requires
Dismissal Of This Case...........................................................13

        D.    The Supreme Court's Recent Decision In *Janus v. AFSCME*
Involving State Public Employees Is Inapplicable...................14

CONCLUSION................................................................................................ 17

i

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Page</u>

*Am. Mfrs. Ins. Co. v. Sullivan*,
    526 U.S. 40  (1999)....................................................................6, 7

*Baraka v. McGreevey,*
    481 F.3d 187 (3rd Cir. 2007) ...........................................5

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2008)........................................................5

*Bret Binder v. Weststar Mortg., Inc.,*
    No. CV 14-7073, 2016 WL 3762710 (E.D. Pa. July 13, 2016) .......................4

*Carter v. TWU and Southwest Airlines*,
    Slip. Op., No. 3:17cv2278-S, 2019 WL 416151,
    (N.D. Tex., Feb. 1, 2019)..............................................8, 16

*Comm's Workers of Am. v. Beck*,
    487 U.S. 735 (1988)......................................................15

*Detroit & Toledo Shore Line R.R. v. United Transp. Union*,
    396 U.S. 142 (1969)......................................................9

*Ellis v. Bhd. of Ry. Employes*,
    466 U.S. 435 (1984)......................................................13

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978)......................................................8

*In re Burlington Coat Factory Sec. Litig*.,
    114 F.3d 1410 (3d Cir. 1997)...........................................3

*Interfaith Comm'y Org. v. Honeywell Intern., Inc.*,
    263 F.Supp.2d 796 (D.N.J. 2003).........................................16

*Janus v. AFSCME,*
    138 S. Ct. 2448 (2018)..........................................*passim*

*Lugar v. Edmondson Oil. Co.*,
    457 U.S. 922 (1982)................................................................................8

*Machinists v. Street*,
    367 U.S. 740 (1961)...........................................................................*passim*

*Otten v. Baltimore & O.R. Co.*,
    205 F.2d 58 (2d Cir. 1953).....................................................................7

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3rd Cir. 1993)................................................................6

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...................................................................5

*Railway Employes' Department v. Hanson*,
    351 U.S. 225 (1956)...........................................................................*passim*

*Rodriguez de Quijas v. Shearson/American Express Inc.*,
    490 U.S. 477 (1989)..............................................................................14

*Ry. Clerks v. Allen*,
    373 U.S. 113 (1963)..............................................................................12

*Texas & New Orleans R.R. Co. v. Bhd. of Ry. & S.S. Clerks*,
    281 U.S. 548 (1930)..............................................................................10

*United States v. Extreme Assocs., Inc.*,
    431 F.3d 150 (3d Cir. 2005)..................................................................13

*White v. Comm's Worker of Am.*,
    370 F.3d 346, 351-52 (2004)..................................................................8

Statutes

45 U.S.C. § 151.............................................................................................2, 9

45 U.S.C. § 152 Eleventh..........................................................................*passim*

45 U.S.C. § 181................................................................................................9

Defendants International Association of Machinists and Aerospace Workers, AFL-CIO, IAM District Lodge 141, and IAM Local Lodge 914 (collectively "IAM" or "the Union") hereby submit this memorandum in support of its Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(6), Fed. R. Civ. P., and LCvR 7.1. Dismissal is required by the Supreme Court's holding in *Railway Employes' Department v. Hanson*, 351 U.S. 225 (1956).

## **INTRODUCTION**

In this action, Plaintiffs seek to overturn Section 2 Eleventh of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 Eleventh, as unconstitutional under the First and Fifth Amendments.

Plaintiffs work as passenger service employees for United Airlines. The IAM is the certified collective bargaining representative for passenger service employees at United. United and the IAM have negotiated a provision in their collective bargaining agreement which requires nonmembers to pay fees to help defray the costs incurred by the Union in representing these employees. This agency fee provision is not required by the RLA, although it is permitted under Section 2 Eleventh of the Act, 45 U.S.C. § 152 Eleventh.

In this action, Plaintiffs challenge the constitutionality of Section 2 Eleventh under the First and Fifth Amendments. However, in *Railway Employes' Department v. Hanson*, 351 U.S. 225 (1956), the Supreme Court expressly rejected the same

1

constitutional challenge raised here, holding that Section 2 Eleventh "is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments." *Id.* at 238. *Hanson* has been the law for over 60 years and requires this Court to dismiss Plaintiffs' Complaint for failure to state a claim. While Plaintiffs' Complaint references the Supreme Court's recent decision in *Janus v. AFSCME,* 138 S. Ct. 2448 (2018), *Janus* addressed First Amendment issues applicable only to employees whose union entered into an agreement with a state, and is wholly inapplicable to the private-sector employees here. Because binding precedent forecloses Plaintiffs' claims, this action should be dismissed.

## STATEMENT OF FACTS AS ALLEGED

### I.    Background Facts.[1]

Plaintiffs Linda Rizzo-Rupon, Susan Marshall, and Noemieo Oliveira work as passenger service employees for United Airlines at Newark Liberty International Airport. Compl. ¶ 1. IAM is the certified collective bargaining representative of United's passenger service employees. Compl., ¶¶ 8-10, Ex. 3. Plaintiffs are represented by three semi-autonomous levels of the IAM: the International Union (Grand Lodge), IAM District Lodge 141, and IAM Local Lodge 914, a local union

---

[1]    For purposes of this motion to dismiss, the Union accepts as true the facts plead in Plaintiffs' Complaint.

affiliated with the District Lodge and International.   Compl., first unnumbered paragraph and ¶¶ 12-13.

The collective bargaining relationship between United and the IAM is governed by the Railway Labor Act, 45 U.S.C. § 151, *et seq*.  Compl. ¶ 11.  The IAM was elected to represent United passenger service employees by majority vote of the employees.  Compl., Ex. 2 (39 NMB 294 (2012)).  United and the IAM have negotiated a collective bargaining agreement governing the terms and conditions of employment at United.  Compl., ¶ 20, Ex. 3. The agreement was ratified by majority vote of the passenger service employees.  Compl., Ex. 5.

Pursuant to Article 8(B)(1) of the agreement, employees are not required to become members of the Union, but they are required to pay "service fees," also known as agency fees, to the Union equal to monthly membership dues.  *See* Compl., Ex. 3; *id.* at Ex. 5 (Union publication stating the Service Fee provision was a "democratically reached decision" of the passenger service employees).   The purpose of this provision is to defray the costs of representing nonmember employees at United.   *Id*; Compl., Ex. 3.  Additionally, nonmember agency fee payers may also become "dues objectors" and pay a reduced fee rate for expenses only directly related to collective bargaining matters.  Compl., Ex. 5, pages 3, 5.[2]

---

[2]    *See also* Attachment A to the Declaration of Alexander Gerulis.  Attached to Plaintiffs' Complaint, Dkt. No. 1-5, are letters from Mr. Gerulis to Plaintiffs' dated September 8, 2017.  The Plaintiffs failed to include, however, the enclosures

## II.    Nature Of Plaintiffs' Complaint.

On January 8, 2019, Plaintiffs filed this suit against the IAM.  This action is a constitutional challenge to Section 2 Eleventh of the Railway Labor Act, which preempts any state or federal law that prohibits unions and employers from negotiating agency fee provisions. 45 U.S.C. § 152 Eleventh; Compl., ¶ 4 (Plaintiffs "seek to have agency fees declared unconstitutional in the RLA context.").

Plaintiffs assert one count entitled "Agency Fee," in which they acknowledge that Section 2 Eleventh preempts laws that would prohibit agency fee agreements between unions and employers, but assert that the "federal government lacks a compelling governmental interest to require nonmembers to financially support a union."  Compl., ¶ 31.  They state that "Plaintiffs are suing the Union Defendants under the First and Fifth Amendments and under 28 U.S.C. § 2201, the Declaratory Judgment Act." *Id*.  Plaintiffs "seek a declaration that, under *Janus* and/or any other relevant case law, agency fees are unconstitutional in the Railway Labor Act

---

included with the September 2017 letters, which are attached to Mr. Gerulis' Declaration.  Because they represent the complete documents sent to Plaintiffs, and relied upon by Plaintiffs in their Complaint, these documents are appropriate to consider as part of a motion to dismiss. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) (A "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (internal citation committed); *Bret Binder v. Weststar Mortg., Inc.,* No. CV 14-7073, 2016 WL 3762710, at *6 n.4 (E.D. Pa. July 13, 2016) (for purposes of a motion to dismiss, it is proper for the court to consider "complete versions of documents attached to the … Complaint")

context." *Id. Janus v. AFSCME* is the 2018 Supreme Court decision which found that in public sector employment, a state violates the First Amendment if it agrees to require its employees to pay agency fees. 138 S. Ct. at 2479.

As relief, Plaintiffs ask for a declaration that Section 2 Eleventh is unconstitutional; that the Union be enjoined from enforcing the Service Fee provision of its collective bargaining agreement with United (which would presumably impact United as well as the other signatory to the agreement); compensatory and/or nominal damages; attorneys' fees and "other relief that the Court deems just, proper, and equitable."  Compl. (Demand for Relief).

For the reasons stated below, IAM hereby moves to dismiss this action as barred by the Supreme Court's holding in *Hanson.*

## **LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  For purposes of a motion to dismiss, a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey,* 481 F.3d 187, 211 (3rd Cir. 2007).  Assuming the factual allegations in the complaint are true, those "[f]actual allegations must be

5

enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2008).  In evaluating a motion to dismiss for failure to state a claim, a court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993).

## ARGUMENT

The Plaintiffs' First Amendment challenge to Section 2 Eleventh of the RLA fails for two distinct reasons identified in *Railway Employes' Department. v. Hanson*, 351 U.S. 225 (1956).  First, no First Amendment issue arises at all in states, like New Jersey, which have not forbidden the negotiation of union security agreements.  Second, even in those states where Section 2 Eleventh of the RLA preempts state laws forbidding union security agreements, that preemptive effect does not violate the First Amendment.  We develop each point separately below.

## I.     Because New Jersey is Not a "Right to Work" State, No First Amendment Claim Could Be Present in this Complaint.

"The union shop provision of the Railway Labor Act is only permissive. Congress has not compelled nor required carriers and employees to enter into union shop agreements."  *Hanson*, 351 U.S. at 231.   Ordinarily, such governmental permission for private parties to act on their own would "be seen as state inaction" that is not subject to any constitutional constraint.  *Am. Mfrs. Ins. Co. v. Sullivan*,

526 U.S. 40, 52 (1999).  In *Hanson*, however, the Supreme Court "took the view that justiciable questions under the First and Fifth Amendments were presented since Congress, by the union shop provision of the Railway Labor Act, sought to strike down inconsistent laws in 17 States," including in Nebraska where *Hanson* originated.  351 U.S. at 231-32.  This was so, because "as far as these 17 States are concerned," "the federal statute is the source of the power and authority by which any private rights are lost or sacrificed."  *Id.* at 232.

As support for this state action analysis, *Hanson* cited the opinion of Judge Learned Hand in *Otten v. Baltimore & O.R. Co.*, 205 F.2d 58 (2d Cir. 1953).  In that opinion, Judge Hand explains that, in states where union security agreements are otherwise lawful, the only effect of Section 2 Eleventh is to repeal the prior prohibition on such agreements contained in Section 2 Fifth.  *Id.* at 60.  "Although that subsection had made such agreements illegal, its repeal left them as they were before it was passed; and there can be no plausible argument that to repeal such a statute was unconstitutional -- certainly, if no vested rights had accrued upon the faith of the repealed statute."  *Ibid*.  Thus, in a state where "a 'union shop,' and perhaps even a 'closed shop,' agreement was valid," "from no view can the constitutionality of Subsection Eleventh be considered to be involved."  *Ibid*.

That is exactly the state of affairs in New Jersey, which has not enacted a so called "right to work" law.  In New Jersey, the only effect of Section 2 Eleventh is

to repeal the RLA's prior prohibition of union security agreements.  In other words, the enactment of Section 2 Eleventh represents "a legislative decision not to intervene in a dispute between an [employer] and [a union] over whether [a union security agreement] is reasonable and necessary." *Sullivan*, 526 U.S. at 53.  And, the Supreme Court's state action "cases will not tolerate 'the imposition of [constitutional] restraints on private action by the simple devise of characterizing the [government's] inaction as 'authorization' or 'encouragement.'" *Ibid.* (*quoting Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164-65 (1978)); *see also Lugar v. Edmondson Oil. Co.*, 457 U.S. 922, 939 (1982); *White v. Comm's Worker of Am.*, 370 F.3d 346, 351-52 (2004) (Alito, Circuit Court Judge) (dismissing constitutional challenge to agency fees under the NLRA; "If the fact that the government enforces privately negotiated contracts rendered any act taken pursuant to a contract state action, the state action doctrine would have little meaning."); *Carter v. TWU and Southwest Airlines*, Slip. Op., No. 3:17cv2278-S, 2019 WL 416151, *17 (N.D. Tex., Feb. 1, 2019) ("[t]here does not appear to be binding or even persuasive caselaw standing for the proposition that the RLA 'transforms' a union into a state actor").

## II. Dismissal Is Required Under *Railway Employes' Department v. Hanson*.

Because *Hanson* arose in a state that *had* prohibited union security agreements, the Supreme Court addressed the constitutionality of Section 2 Eleventh and squarely held that it "does not violate either the First or the Fifth Amendments."

8

351 U.S. at 238.  That holding is supported by 63 years of Supreme Court precedent upholding *Hanson*, and was not overruled but rather reinforced by the Supreme Court's recent decision in *Janus v. AFSCME*.

### A. Background Of RLA And Section 2 Eleventh.

By way of background, after years of labor unrest in the railroad industry and many unsuccessful attempts at regulation, the RLA "was passed in 1926 to encourage collective bargaining by railroads and their employees in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce."  *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 148 (1969) (internal citations omitted).  Air carriers and their employees were made subject to the RLA in 1936.  45 U.S.C. §§ 181-82.

The RLA applies to employees in the rail and airline industries, many of which have national networks, and is designed to address the unique nature of this highly mobile workforce, and the potential impact of labor unrest in these industries on the national economy.  45 U.S.C. § 151a.  Towards these goals, the Act imposes upon the parties a long and "rather elaborate machinery" for conciliation and "an obligation to make every reasonable effort to negotiate a settlement and to refrain from altering the status quo by resorting to self-help while the Act's remedies [are] being exhausted."  *Detroit & Toledo Shore Line,* 396 U.S at 149.  The RLA embodies a Congressional policy of placing "the responsibility squarely upon the carriers and

the unions mutually to work out settlements of all aspects of the labor relationship."

*Street*, 367 U.S. at 756.[3]

In 1951 Congress amended the RLA by adding Section 2 Eleventh of the Act, which allows for the parties to negotiate a union shop provision. *Id.* at 755-60.[4] Section 2 Eleventh does not compel unions or employers to enter into such agreements; rather it simply permits them to do so as part of the bargaining process. *See* 45 U.S.C. § 152 Eleventh.[5]

> Congress … evaluated the proposal for authorizing the union shop primarily in terms of its relationship to the financing of the unions' participation in the machinery created by the Railway Labor Act to achieve its goals. The frameworks for fostering voluntary adjustments between the carriers and their employees in the interest of the efficient discharge by the carriers of their important function with minimum disruption from labor strife has no statutory parallel in other industry. That machinery, the product of a long legislative evolution, is more complex than that of another industry.

---

[3]  *See Texas & New Orleans R.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 570 (1930) (upholding the constitutionality of the RLA; rejecting railroad's contention that the RLA violated parties' First or Fifth Amendment rights by preventing either party from influencing the other in the section of representation based on Congress' power to regulate commerce).

[4]  Originally, the RLA was silent as to union shops. In 1934, Congress amended the RLA to expressly prohibit union shops for fear that they were being used to create company-dominated unions. *Street,* 267 U.S. at 751, 755.

[5]  The statute also protects dissenters by providing that the union shop provision cannot apply to employees for whom membership is not offered, or is not offered on equal terms as other employees, or for matters unrelated to the payment of dues, such as fines or other forms of discipline imposed by the union. 45 U.S.C. § 152 Eleventh.

*Street,* 367 U.S. at 755 (1961); *see also id.* at 751 (union security was in "recognition of the expenses and burdens incurred by the unions in administration of the complex scheme of the [RLA]").

As the legislative history of Section 2 Eleventh explains, collective bargaining in the transportation industry is particularly costly because of the Act's numerous requirements; "The mediation, arbitration, and Presidential Emergency Board provisions of the act, while greatly in the public interest, are very costly to the unions." *Id.* at 761-62. Moreover, dues or fees are the means by which unions have the resources to complete their statutory duties under the Act. *Id.* at 760-61 ("performance of these functions entails the expenditures of considerable funds"). Because a union has a duty to represent equally all employees in the bargaining unit, regardless of their membership status in the union, through these statutorily-mandated mechanisms, Congress believed it to be in the interest of interstate commerce to allow unions and employers to negotiate contract provisions to require contributions to the administering and negotiation of the contract. *Id.* at 763.

### B. The Supreme Court Holds In *Railway Employees' Department v. Hanson* That Section 2 Eleventh "does not violate either the First or the Fifth Amendments."

In 1956, the Supreme Court expressly rejected a constitutional challenge to Section 2 Eleventh in *Hanson,* 351 U.S. 225 (1956). *Hanson* arose in the Nebraska state courts and was brought by employees of Union Pacific Railroad seeking to

enjoin the application and enforcement of a union shop provision agreed to by the

railroad and labor organizations based on Nebraska's so called "right to work" law.

*Id.* at 227-28.  In upholding the provision, the Court examined the legislative history

of both the RLA generally and Section 2 Eleventh specifically, as well as the "well

established" role of Congress in regulating labor relations in interstate commerce.

*Id.* at 233.  The Court found that

> Industrial peace along the arteries of commerce is a legitimate objective; and Congress has great latitude in choosing the methods by which it is to be obtained.  The choice by the Congress of the union shop as a stabilizing force seems to us to be an allowable one.

*Id.* at 233.

With regard to the First and Fifth Amendment challenges, the Court in *Hanson*

held that "the requirement for financial support of the collective-bargaining agency

by all who receive the benefit of its work is within the power of Congress under the

Commerce Clause and *does not violate either the First or the Fifth Amendments*."

*Id.* at 238 (emphasis added).  With regard to concepts of the "right to work," the

Court found, "one would have to be blind to history to assert that trade unionism did

not enhance and strengthen the right to work."  *Id.* at 235.  *Hanson* has been settled

law for over 60 years and frequently reaffirmed by the Supreme Court.

Thus, while the Court later interpreted Section 2 Eleventh to apply only to

expenses germane to the bargaining process, it continued to uphold the validity of

the provision and its decision in *Hanson*.  *See Street*, 367 U.S. 740 (1961); *Ry. Clerks*

*v. Allen*, 373 U.S. 113 (1963); *Ellis v. Bhd. of Ry. Employes*, 466 U.S. 435 (1984). In reaffirming the principle that the collection of fees to defray the cost of negotiation and administering the contract is permissible, the Court noted that:

> The complete shutoff of this source of income defeats the congressional plan to have all employees benefited share costs 'in the realm of collective bargaining,' and threatens the basis congressional policy of the Railway Labor Act for self-adjustments between effective carrier organizations and effective labor organizations.

*Street,* 367 U.S. at 772.

### C. The Supreme Court's Holding In *Hanson* Requires Dismissal Of This Case.

In this action, Plaintiffs neither challenge the Union's procedures for processing their fees, nor do they allege that their fees are being used for improper purposes under the Act.  It is undisputed that they are not required to become union members (and in fact are not members) and can become dues objectors and only pay a *pro rata* share of dues equivalent, which is used to help defray the cost of expenses related to collective bargaining.  Instead, Plaintiffs directly challenge the constitutionality of Section 2 Eleventh under the First and Fifth Amendments.  This matter was squarely decided by the Supreme Court in *Hanson* and that decision requires this Court dismiss Plaintiffs' lawsuit for failure to state a claim.  *See United States v. Extreme Assocs., Inc.,* 431 F.3d 150, 155 (3d Cir. 2005) (reversing decision of district court based on district court's failure to follow Supreme Court precedent), *cert. denied*, 547 U.S. 1143 (2006).  Dismissal is required even if could be argued,

13

as Plaintiffs wrongly suggest in their Complaint, that the legal reasoning behind the binding precedent has been called into doubt by another line of cases. *Id.* (*citing to Rodriguez de Quijas v. Shearson/American Express Inc*., 490 U.S. 477, 484 (1989) ("[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions").

Plaintiffs' claims are precluded by *Hanson* and this case should be dismissed.

### D. The Supreme Court's Recent Decision In *Janus v. AFSCME* Involving State Public Employees Is Inapplicable.

Plaintiffs nevertheless mistakenly claim that the Supreme Court's recent decision in *Janus v. AFSCME*, overrules both aspects of the holding in *Hanson* discussed above and requires a finding that "agency fees are unconstitutional in the Railway Labor Act context." Compl. ¶ 32. *Janus* did not so hold, and nothing in that decision could be reasonably construed to support such a determination. To the contrary, the majority decision in *Janus* all but expressly reaffirmed that private-sector agency fee obligations under the RLA do not raise any First Amendment issue. *See Janus*, 138 S. Ct. at 2479 and n.24.

The issue in *Janus* was whether "public-sector agency-shop arrangements violate the First Amendment." *Id.* at 2478. The Court held that such arrangements -- in which a governmental entity and a labor organization agree to require

14

government employees to pay fees, which are used by the union to negotiate how government funds are spent and in what amounts -- implicate the First Amendment in ways dramatically distinct from agency fees in the private sector.  Public-sector fees involve "the government … compel[ling] a person to pay for another party's speech," on matters involving "the budget of the government" and "the performance of government services."  *Id.* at 2467, 2473.  With respect to a non-consenting employee, the Court held, "this arrangement [in the public sector] violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern."  *Id.* at 2460; *see also id.* at 2466 (public-sector agency fees inherently pay for "speak[ing] out with the objective of obtaining government action").

Private sector agency fees raise no such issue.  Plaintiffs here all work for a private company -- United Airlines.  The First Amendment limits governmental action, not the action of private parties.  Pursuant to a provision of a contract negotiated between IAM and United, and approved by majority of the membership, Plaintiffs pay only a reduced agency fee to the IAM as the certified collective bargaining representative, and such fees are only used for matters germane to collective bargaining -- they are not used for political activities or matters outside the realm of labor-management relations.  *See generally Comm's Workers of Am. v. Beck*, 487 U.S. 735, 762-63 (1988) ("§2, Eleventh of the RLA[] authorizes the

exaction of only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.") (citation omitted).  No government mandates that Plaintiffs pay an agency fee; it is the product of a private arrangement between private parties, and the fee is used solely to support the union's obligations as the exclusive collective bargaining representative.  As the *Janus* Court took pains to note, "Congress' *bare authorization* of *private-sector* union shops under the Railway Labor Act … [raises] a very different First Amendment question … [than] when a State *requires* its employees to pay agency fees." *Id.* at 2479; s*ee also Carter v. TWU,* No. 3:17-CV-2278-S, 2019 WL 416151 (N.D. Tex. Feb. 1, 2019), at *12 (rejecting attempt to apply *Janus* in the private sector; "*Janus* applies to public-sector unions and workers, not private-sector unions and workers.").

In sum, the *Janus* Court did not overturn the cases which control here and, indeed, went out of its way to pour cold water on the very notion of any free speech issue arising under Section 2 Eleventh.  *Id.* at 2479, n.24.  Plaintiffs attempt to rely on *Janus* in this case must fail.[6]

---

[6]    Because Plaintiffs' substantive claims fail, their request for relief under the Declaratory Judgement Act must also fail. *See Interfaith Comm'y Org. v. Honeywell Intern., Inc.*, 263 F.Supp.2d 796, 871 (D.N.J. 2003) (because party cannot sustain its burden of on its substantive claims, it "is not entitled to a declaratory judgment").

## **<u>CONCLUSION</u>**

For the foregoing reasons, the IAM respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety.


Dated:  June 3, 2019                /s/ *John J. Grunert*
John J. Grunert, Bar No. 036402012
Jeffrey A. Bartos (*pro hac vice filed*)
Elizabeth A. Roma (*pro hac vice filed*)
GUERRIERI, BARTOS & ROMA, P.C.
1900 M Street, NW, Suite 700
Washington, DC  20036
(202) 624-7400
jgrunert@geclaw.com
jbartos@geclaw.com
eroma@geclaw.com

*Counsel for IAM Defendants*

17

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, the undersigned attorney for the IAM certifies that, to the best of signatory's knowledge, the matter in controversy is not the subject of another action pending in any court or of any pending arbitration or administrative proceeding.

/s/ *John J. Grunert*
John J. Grunert